(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SHINN, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS, REHABILITATION AND REENTRY *v.* MARTINEZ RAMIREZ

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 20–1009. Argued December 8, 2021—Decided May 23, 2022*

Respondents David Martinez Ramirez and Barry Lee Jones were each convicted of capital crimes in Arizona state court and sentenced to death. The Arizona Supreme Court affirmed each case on direct review, and each prisoner was denied state postconviction relief. Each also filed for federal habeas relief under 28 U. S. C. §2254, arguing that trial counsel had been ineffective for failing to conduct adequate investigations. The Federal District Court held in each case that the prisoner's ineffective-assistance claim was procedurally defaulted because it was not properly presented in state court. To overcome procedural default in such cases, a prisoner must demonstrate "cause" to excuse the procedural defect and "actual prejudice." *Coleman* v. *Thompson,* 501 U. S. 722, 750. To demonstrate cause, Ramirez and Jones relied on *Martinez* v. *Ryan,* 566 U. S. 1, which held that ineffective assistance of postconviction counsel may be cited as cause for the procedural default of an ineffective-assistance-of-trial-counsel claim. In Ramirez's case, the District Court permitted him to supplement the record with evidence not presented in state court to support his case to excuse the procedural default. Assessing the new evidence, the court excused the procedural default but rejected Ramirez's ineffective-assistance claim on the merits. The Ninth Circuit reversed and remanded for more evidentiary development to litigate the merits of

——————

*Together with *Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry, et al.* v. *Jones* (see this Court's Rule 12.4), also on certiorari to the same court.

Ramirez's ineffective-assistance-of-trial-counsel claim. In Jones' case, the District Court held a lengthy evidentiary hearing on "cause" and "prejudice," forgave his procedural default, and held that his state trial counsel had provided ineffective assistance. The State of Arizona petitioned this Court in both cases, arguing that §2254(e)(2) does not permit a federal court to order evidentiary development simply because postconviction counsel is alleged to have negligently failed to develop the state-court record.

*Held*: Under §2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on the ineffective assistance of state postconviction counsel. Pp. 6–22.

 (a) To respect federal-state dual sovereignty, see *Printz* v. *United States,* 521 U. S. 898, 918, the availability of federal habeas relief is narrowly circumscribed, see *Brown* v. *Davenport*, 596 U. S. \_\_\_, \_\_\_–\_\_\_. For example, only rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules. Pp. 6–13.

  (1) Federal habeas review overrides the States' core power to enforce criminal law—an intrusion that "imposes special costs" on the federal system. *Engle* v. *Isaac,* 456 U. S. 107, 128. Two of those costs are particularly relevant here. First, a federal order to retry or release a state prisoner overrides the State's sovereign power to enforce "societal norms through criminal law." *Calderon* v. *Thompson,* 523 U. S. 538, 556. Second, federal intervention imposes significant costs on state criminal justice systems. See, *e.g., Wainwright* v. *Sykes,* 433 U. S. 72, 90. Pp. 6–8.

  (2) In light of these costs, this Court recognizes that federal habeas review is not "a substitute for ordinary error correction through appeal," but is an "extraordinary remedy" that guards only against "extreme malfunctions in the state criminal justice systems." *Harrington* v. *Richter,* 562 U. S. 86, 102–103. To ensure that federal habeas retains its narrow role, both Congress and federal habeas courts have set out strict rules requiring prisoners to raise all of their federal claims in state court before seeking federal relief. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires state prisoners to "exhaus[t] the remedies available in the courts of the State" before seeking federal habeas relief. §2254(b)(1)(A). And the doctrine of procedural default—"an important 'corollary' to the exhaustion requirement," *Davila* v. *Davis*, 582 U. S. \_\_\_, \_\_\_—generally prevents federal courts from hearing any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules," *Edwards* v. *Carpenter,* 529 U. S. 446, 453. Together, exhaustion and procedural default promote federal-state comity by affording States

"an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth* v. *Serrano,* 454 U. S. 1, 3 (*per curiam*), and by protecting against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U. S., at 750.  Pp. 8–10.

(3) Nonetheless, a federal court is not required to automatically deny unexhausted or procedurally defaulted claims.  For instance, when a claim is procedurally defaulted, a federal court can forgive the default and adjudicate the claim if the prisoner provides an adequate excuse.  And if the state-court record for that defaulted claim is undeveloped, the prisoner must show that factual development in federal court is appropriate.  Pp. 10–13.

(i) Federal courts may excuse procedural default only if a prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law."  *Coleman*, 501 U. S., at 750.  With respect to cause, "attorney error cannot provide cause to excuse a default" "in proceedings for which the Constitution does not guarantee the assistance of counsel at all."  *Davila*, 582 U. S., at \_\_\_.  But in *Martinez*, this Court recognized a "narrow exception" to that rule, holding that ineffective assistance of state postconviction counsel may constitute "cause" to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings.  566 U. S., at 9.  Pp. 10–11.

(ii) Excusing a prisoner's failure to develop the state-court record faces an even higher bar.  Section 2254(e)(2) applies when a prisoner "has failed to develop the factual basis of a claim," *i.e.,* is "at fault" for the undeveloped record in state court, *Williams* v. *Taylor,* 529 U. S. 420, 432.  If a prisoner is "at fault," a federal court may hold "an evidentiary hearing on the claim" in only two limited scenarios not relevant here.  See §§2254(e)(2)(A)(i), (ii).  The prisoner also must show that further factfinding would demonstrate, by clear and convincing evidence, that he is innocent of the crime charged.  Pp. 12–13.

(b) Although respondents do not satisfy §2254(e)(2)'s narrow exceptions, the Court of Appeals forgave respondents' failures to develop the state-court record because, in its view, they each received ineffective assistance of state postconviction counsel.  The Court of Appeals erred.  Pp. 13–22.

(1) Respondents primarily argue that a prisoner is not "at fault" for the undeveloped record if state postconviction counsel negligently failed to develop the state record for a claim of ineffective assistance of trial counsel.  But under AEDPA and this Court's precedents, state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner.  Pp. 13–19.

(i) A prisoner "bears the risk in federal habeas for all attorney errors made in the course of the representation." *Coleman*, 501 U. S., at 754. And, because there is no constitutional right to counsel in state postconviction proceedings, a prisoner must ordinarily "bea[r] responsibility" for all attorney errors during those proceedings, *Williams*, 529 U. S., at 432, including responsibility for counsel's negligent failure to develop the state postconviction record. This Court's prior cases make this point clear. See, *e.g., Keeney* v. *Tamayo-Reyes,* 504 U. S. 1; *Williams*, 529 U. S. 420; *Holland* v. *Jackson,* 542 U. S. 649 (*per curiam*). Thus, a prisoner is "at fault" even when state postconviction counsel is negligent. Pp. 14–15.

(ii) Respondents propose extending *Martinez* so that ineffective assistance of postconviction counsel can excuse a prisoner's failure to develop the state-court record under §2254(e)(2). But unlike judge-made exceptions to procedural default, §2254(e)(2) is a statute, and thus, this Court has no power to redefine when a prisoner "has failed to develop the factual basis of a claim in State court proceedings." Nor is it plausible, as respondents contend, that Congress might have enacted §2254(e)(2) with the expectation that this Court would one day open the door to allowing the ineffective assistance of state postconviction counsel to be cause to forgive procedural default. Finally, *Martinez* itself cuts against respondents' proposed result. *Martinez* foreclosed any extension of its holding beyond the "narrow exception" to procedural default at issue in that case. See 566 U. S., at 9. That assurance has bite only if the State can rely on the state-court record. The cases here demonstrate the improper burden imposed on the States when *Martinez* applies beyond its narrow scope, with the sprawling evidentiary hearing in Jones' case being particularly poignant. Pp. 15–19.

(2) Respondents propose a second reading of §2254(e)(2) that supposedly permits consideration of new evidence in their habeas cases. First, they argue that because §2254(e)(2) bars only "an evidentiary hearing on the claim," a federal court may hold an evidentiary hearing to determine whether there is cause and prejudice. Second, respondents contend that the habeas court may then consider that new evidence to evaluate the merits of the underlying ineffective-assistance claim. By considering already admitted evidence, respondents reason, the habeas court is not holding a "hearing" prohibited by §2254(e)(2). But, in *Holland*, this Court explained that §2254(e)(2)'s "restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing." 542 U. S., at 653 (emphasis deleted). Therefore, when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise reviews any evidence for any purpose, it may not consider that evidence on the merits of a negligent

prisoner's defaulted claim unless the exceptions in §2254(e)(2) are satisfied. Pp. 19–22.

937 F. 3d 1230 and 943 F. 3d 1211, reversed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and ALITO, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. SOTOMAYOR, J., filed a dissenting opinion, in which BREYER and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order that
corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 20–1009

DAVID SHINN, DIRECTOR, ARIZONA DEPARTMENT
OF CORRECTIONS, REHABILITATION AND
REENTRY, PETITIONER *v.* DAVID
MARTINEZ RAMIREZ

DAVID SHINN, DIRECTOR, ARIZONA DEPARTMENT
OF CORRECTIONS, REHABILITATION AND
REENTRY, ET AL., PETITIONERS *v.*
BARRY LEE JONES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 23, 2022]

JUSTICE THOMAS delivered the opinion of the Court.

A federal habeas court generally may consider a state
prisoner's federal claim only if he has first presented that
claim to the state court in accordance with state procedures.
When the prisoner has failed to do so, and the state court
would dismiss the claim on that basis, the claim is "proce-
durally defaulted."  To overcome procedural default, the
prisoner must demonstrate "cause" to excuse the proce-
dural defect and "actual prejudice" if the federal court were
to decline to hear his claim.  *Coleman* v. *Thompson*, 501
U. S. 722, 750 (1991).  In *Martinez* v. *Ryan*, 566 U. S. 1
(2012), this Court explained that ineffective assistance of
postconviction counsel is "cause" to forgive procedural de-
fault of an ineffective-assistance-of-trial-counsel claim, but
only if the State required the prisoner to raise that claim

for the first time during state postconviction proceedings.

Often, a prisoner with a defaulted claim will ask a federal habeas court not only to consider his claim but also to permit him to introduce new evidence to support it.  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the standard to expand the state-court record is a stringent one.  If a prisoner has "failed to develop the factual basis of a claim in State court proceedings," a federal court "shall not hold an evidentiary hearing on the claim" unless the prisoner satisfies one of two narrow exceptions, see 28 U. S. C. §2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence "by clear and convincing evidence," §2254(e)(2)(B).  In all but these extraordinary cases, AEDPA "bars evidentiary hearings in federal habeas proceedings initiated by state prisoners."  *McQuiggin* v. *Perkins*, 569 U. S. 383, 395 (2013).

The question presented is whether the equitable rule announced in *Martinez* permits a federal court to dispense with §2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record.  We conclude that it does not.

I

In this case, we address two petitions brought by the State of Arizona.  See *Ramirez* v. *Ryan*, 937 F. 3d 1230 (CA9 2019); *Jones* v. *Shinn*, 943 F. 3d 1211 (CA9 2019).

A

On May 25, 1989, David Ramirez fatally stabbed his girlfriend, Mary Ann Gortarez, and her 15-year-old daughter, Candie, in their home.  937 F. 3d, at 1234–1235; *State* v. *Ramirez*, 178 Ariz. 116, 119, 121, 871 P. 2d 237, 240, 242 (1994).  Ramirez stabbed Mary Ann 18 times in the neck with a pair of scissors, and Candie 15 times in the neck with a box cutter.  *Id.*, at 121, 871 P. 2d, at 242.  Police also found physical evidence that Ramirez had raped Candie, and

Ramirez later admitted that he had sex with the child on the night of the murders and four times before. *Ibid.* A jury convicted Ramirez of two counts of premeditated first-degree murder. *Ibid.* The trial court sentenced Ramirez to death, *ibid.*, and the Arizona Supreme Court affirmed on direct review, *id.*, at 132, 871 P. 2d, at 253.

Ramirez then filed his first petition for state postconviction relief. That petition raised myriad claims, but it did not raise the one at issue here: that Ramirez's trial counsel provided ineffective assistance for "failing to conduct a complete mitigation investigation" or "obtai[n] and present available mitigation evidence at sentencing." App. 402. Ramirez did not raise this ineffective-assistance claim until he subsequently filed a successive state habeas petition, which the state court summarily denied as untimely under Arizona law. See *ibid.*

Ramirez also petitioned the U. S. District Court for the District of Arizona for a writ of habeas corpus under 28 U. S. C. §2254. As relevant here, the District Court held that Ramirez had procedurally defaulted his ineffective-assistance claim by failing to raise it before the Arizona courts in a timely fashion. See App. 402–403. Ramirez responded that the District Court should forgive the procedural default because his state postconviction counsel was himself ineffective for failing to raise the trial-ineffective-assistance claim and develop the facts to support it.

The District Court permitted Ramirez to file several declarations and other evidence not presented to the state court to support his request to excuse his procedural default. See 937 F. 3d, at 1238. Assessing the new evidence, the District Court excused the procedural default but rejected Ramirez's ineffective-assistance claim on the merits. See *id.*, at 1240.

The Ninth Circuit reversed and remanded. Like the District Court, it held that Ramirez's state postconviction coun-

sel's failure to raise and develop the trial-ineffective-assistance claim was cause to forgive the procedural default. See *id.*, at 1247–1248. The Ninth Circuit also held that Ramirez's underlying trial-ineffective-assistance claim was substantial, and that Ramirez therefore had suffered prejudice. See *id.*, at 1243–1247. But, unlike the District Court, the Court of Appeals declined to decide the merits of Ramirez's claim. The court remanded the case for further factfinding because, in its view, Ramirez was "entitled to evidentiary development to litigate the merits of his ineffective assistance of trial counsel claim." *Id.*, at 1248.

Arizona petitioned for rehearing en banc, arguing that the Ninth Circuit's remand for additional evidentiary development violated 28 U. S. C. §2254(e)(2). The Ninth Circuit denied rehearing over an eight-judge dissent by Judge Collins. See 971 F. 3d 1116 (2020).

### B

On May 1, 1994, Barry Lee Jones repeatedly beat his girlfriend's 4-year-old daughter, Rachel Gray. See 943 F. 3d, at 1215–1216; *State* v. *Jones*, 188 Ariz. 388, 391, 937 P. 2d 310, 313 (1997). One blow to Rachel's abdomen ruptured her small intestine. See *id.*, at 391, 937 P. 2d, at 313. She also sustained several injuries to her vagina and labia consistent with sexual assault. *Ibid.* Early the next morning, Jones drove Rachel to the hospital, where she was pronounced dead on arrival. See *ibid.* Rachel died of peritonitis—"an infection of the lining of the abdomen caused by a ruptured intestine." *Ibid.* A jury convicted Jones of sexual assault, three counts of child abuse, and felony murder. *Ibid.* The trial judge sentenced Jones to death, *ibid.*, and the Arizona Supreme Court affirmed on direct review, see *id.*, at 401, 937 P. 2d, at 323.

Jones then petitioned for state postconviction relief. He alleged ineffective assistance by his trial counsel, but not the specific trial-ineffective-assistance claim at issue here:

that his counsel "fail[ed] to conduct sufficient trial investigation." 943 F. 3d, at 1218. The Arizona Supreme Court summarily denied relief. See *ibid.*

Jones next filed a habeas petition in the U. S. District Court for the District of Arizona. The District Court held that Jones' trial-ineffective-assistance claim was procedurally defaulted, so Jones, like Ramirez, invoked his postconviction counsel's ineffective assistance as grounds to forgive the default. *Ibid.* To bolster his case for cause and prejudice, Jones also moved to supplement the undeveloped state-court record. *Ibid.* The District Court held a 7-day evidentiary hearing with more than 10 witnesses and ultimately decided to forgive Jones' procedural default. See *id.*, at 1219, 1225–1226. The court then relied on the new evidence from the cause-and-prejudice hearing to hold, on the merits, that Jones' trial counsel had provided ineffective assistance. See *id.*, at 1219.

Arizona appealed, arguing that §2254(e)(2) did not permit the evidentiary hearing. The Ninth Circuit affirmed, holding that §2254(e)(2) did not apply because Jones' state postconviction counsel was ineffective for failing to develop the state-court record for Jones' trial-ineffective-assistance claim. See *id.*, at 1220–1222.

As in *Ramirez*, Arizona petitioned for rehearing en banc. And, also as in *Ramirez*, the Ninth Circuit denied Arizona's petition over the dissent of Judge Collins, joined by seven other judges. *Jones* v. *Shinn*, 971 F. 3d 1133 (2020).

## C

As noted above, Arizona petitioned for a writ of certiorari in both *Ramirez* and *Jones*. The State maintains that 28 U. S. C. §2254(e)(2) does not permit a federal court to order evidentiary development simply because postconviction counsel is alleged to have negligently failed to develop the state-court record. Respondents do not dispute, and therefore concede, that their habeas petitions fail on the state-

court record alone.  We granted certiorari, 593 U. S. ___
(2021).*

## II

A state prisoner may request that a federal court order
his release by petitioning for a writ of habeas corpus.  See
28 U. S. C. §2254.  The writ may issue "only on the ground
that [the prisoner] is in custody in violation of the Consti-
tution or laws or treaties of the United States."  §2254(a).
To respect our system of dual sovereignty, see *Printz* v.
*United States*, 521 U. S. 898, 918 (1997), the availability of
habeas relief is narrowly circumscribed, see *Brown* v. *Dav-
enport*, 596 U. S. ___, ___–___ (2022) (slip op., at 11–14).
Among other restrictions, only rarely may a federal habeas
court hear a claim or consider evidence that a prisoner did
not previously present to the state courts in compliance
with state procedural rules.

### A

"From the beginning of our country, criminal law enforce-
ment has been primarily a responsibility of the States."
*Kansas* v. *Garcia*, 589 U. S. ___, ___ (2020) (slip op., at 19).
The power to convict and punish criminals lies at the heart
of the States' "residuary and inviolable sovereignty."  The
Federalist No. 39, p. 245 (C. Rossiter ed. 1961) (J. Madison);

––––––––––

*Ramirez alleges that Arizona forfeited any §2254(e)(2) argument
in his case because it did not object to some evidentiary development in
the District Court or before the Ninth Circuit panel.  But Arizona did
object to further factfinding before the Ninth Circuit panel, see Respond-
ents-Appellees' Answering Brief in *Ramirez* v. *Ryan*, No. 10–99023
(CA9), ECF Doc. 37, p. 58, and, in any event, the Ninth Circuit passed
upon §2254(e)(2) when it ordered additional factfinding on remand, see
*United States* v. *Williams*, 504 U. S. 36, 41 (1992).  Further, because we
have discretion to forgive any forfeiture, and because "our deciding the
matter now will reduce the likelihood of further litigation" in a 30-year-
old murder case, *Polar Tankers*, *Inc.* v. *City of Valdez*, 557 U. S. 1, 14
(2009) (plurality opinion), we choose to forgive the State's forfeiture be-
fore the District Court.

see also *Gamble* v. *United States*, 587 U. S. \_\_\_, \_\_\_–\_\_\_ (2019) (slip op., at 9–10). Thus, "[t]he States possess primary authority for defining and enforcing the criminal law," *Engle* v. *Isaac*, 456 U. S. 107, 128 (1982), and for adjudicating "constitutional challenges to state convictions," *Harrington* v. *Richter*, 562 U. S. 86, 103 (2011).

Because federal habeas review overrides the States' core power to enforce criminal law, it "intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Ibid.* (internal quotation marks omitted). That intrusion "imposes special costs on our federal system." *Engle*, 456 U. S., at 128; see also *Kuhlmann* v. *Wilson*, 477 U. S. 436, 453, n. 16 (1986); *Davila* v. *Davis*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 15). Here, two of those costs are particularly relevant.

First, a federal order to retry or release a state prisoner overrides the State's sovereign power to enforce "societal norms through criminal law." *Calderon* v. *Thompson*, 523 U. S. 538, 556 (1998) (internal quotation marks omitted). That is so because habeas relief "frequently cost[s] society the right to punish admitted offenders." *Engle*, 456 U. S., at 127; see also *Edwards* v. *Vannoy*, 593 U. S. \_\_\_, \_\_\_ (2021) (slip op., at 6) ("When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims"). "Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Calderon*, 523 U. S., at 556. "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Ibid.* (internal quotation marks and citation omitted).

Second, federal intervention imposes significant costs on state criminal justice systems. It "disturbs the State's sig-

nificant interest in repose for concluded litigation," *Harrington*, 562 U. S., at 103 (internal quotation marks omitted), and undermines the States' investment in their criminal trials. If the state trial is merely a "'tryout on the road'" to federal habeas relief, that "detract[s] from the perception of the trial of a criminal case in state court as a decisive and portentous event." *Wainwright* v. *Sykes*, 433 U. S. 72, 90 (1977).

B

In light of these significant costs, we have recognized that federal habeas review cannot serve as "a substitute for ordinary error correction through appeal." *Harrington*, 562 U. S., at 102–103. The writ of habeas corpus is an "extraordinary remedy" that guards only against "extreme malfunctions in the state criminal justice systems." *Id.*, at 102 (internal quotation marks omitted); see also *Brecht* v. *Abrahamson*, 507 U. S. 619, 633–634 (1993). To ensure that federal habeas corpus retains its narrow role, AEDPA imposes several limits on habeas relief, and we have prescribed several more. See, *e.g.*, *Brown*, 596 U. S., at ___–___ (slip op., at 11–13). And even if a prisoner overcomes all of these limits, he is never entitled to habeas relief. He must still "persuade a federal habeas court that law and justice require [it]." *Id.*, at ___ (slip op., at 11) (internal quotation marks omitted).

As relevant here, both Congress and federal habeas courts have set out strict rules requiring prisoners to raise all of their federal claims in state court before seeking federal relief. First, AEDPA requires state prisoners to "exhaus[t] the remedies available in the courts of the State" before seeking federal habeas relief. 28 U. S. C. §2254(b)(1)(A). Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures. See *O'Sullivan* v. *Boerckel*, 526 U. S. 838, 848 (1999). If he does

so, a federal habeas court may hear his claim, but its review is highly circumscribed. In particular, the federal court may review the claim based solely on the state-court record, see *Cullen* v. *Pinholster*, 563 U. S. 170, 180 (2011), and the prisoner must demonstrate that, under this Court's precedents, no "fairminded juris[t]" could have reached the same judgment as the state court, *Harrington*, 562 U. S., at 102; see §2254(d).

State prisoners, however, often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford* v. *Ngo*, 548 U. S. 81, 92–93 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. See *Coleman*, 501 U. S., at 732. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. *Davila*, 582 U. S., at \_\_\_ (slip op., at 4). Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards* v. *Carpenter*, 529 U. S. 446, 453 (2000).

Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth* v. *Serrano*, 454 U. S. 1, 3 (1981) (*per curiam*), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U. S., at 750. Ultimately, "it would be unseemly in our dual system of government for a federal

district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation," *Darr* v. *Burford*, 339 U. S. 200, 204 (1950), and to do so consistent with their own procedures, see *Edwards*, 529 U. S., at 452–453.

C

Despite the many benefits of exhaustion and procedural default, and the substantial costs when those doctrines are not enforced, we have held that a federal court is not required to automatically deny unexhausted or procedurally defaulted claims. When a claim is unexhausted, the prisoner might have an opportunity to return to state court to adjudicate the claim. See, *e.g.*, *Rose* v. *Lundy*, 455 U. S. 509, 520 (1982). When a claim is procedurally defaulted, a federal court can forgive the default and adjudicate the claim if the prisoner provides an adequate excuse. Likewise, if the state-court record for that defaulted claim is undeveloped, the prisoner must show that factual development in federal court is appropriate.

1

"Out of respect for finality, comity, and the orderly administration of justice," *Dretke* v. *Haley*, 541 U. S. 386, 388 (2004), federal courts may excuse procedural default only if a prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," *Coleman*, 501 U. S., at 750. To establish cause, the prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray* v. *Carrier*, 477 U. S. 478, 488 (1986). Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that "'the errors at . . . trial created a *possibility* of prejudice," but rather that the constitutional violation "worked to his *actual* and substantial disadvantage.'" *Id.*, at 494 (quoting *United*

*States* v. *Frady*, 456 U. S. 152, 170 (1982)).

With respect to cause, "[a]ttorney ignorance or inadvertence" cannot excuse procedural default. *Coleman*, 501 U. S., at 753. "[T]he attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Ibid.* (internal quotation marks omitted). That said, "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State." *Murray*, 477 U. S., at 488. That is not because a constitutional error "is so bad that the lawyer ceases to be an agent" of the prisoner, but rather because a violation of the right to counsel "must be seen as an external factor" to the prisoner's defense. *Coleman*, 501 U. S., at 754 (internal quotation marks omitted). "It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default." *Davila*, 582 U. S., at \_\_\_ (slip op., at 6).

In *Martinez*, this Court recognized a "narrow exception" to the rule that attorney error cannot establish cause to excuse a procedural default unless it violates the Constitution. 566 U. S., at 9. There, the Court held that ineffective assistance of state postconviction counsel may constitute "cause" to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings. See *ibid.* One year later, in *Trevino* v. *Thaler*, 569 U. S. 413 (2013), this Court held that this "narrow exception" applies if the State's judicial system effectively forecloses direct review of trial-ineffective-assistance claims. *Id.*, at 428. Otherwise, attorney error where there is no right to counsel remains insufficient to show cause. *Martinez*, 566 U. S., at 16.

2

There is an even higher bar for excusing a prisoner's fail-ure to develop the state-court record. Shortly before AEDPA, we held that a prisoner who "negligently failed" to develop the state-court record must satisfy *Coleman*'s cause-and-prejudice standard before a federal court can hold an evidentiary hearing. *Keeney* v. *Tamayo-Reyes*, 504 U. S. 1, 9 (1992). In *Keeney*, we explained that "little [could] be said for holding a habeas petitioner to one standard for failing to bring a claim in state court and excusing the peti-tioner under another, lower standard for failing to develop the factual basis of that claim in the same forum." *Id.*, at 10. And, consistent with *Coleman*, we held that evidentiary development would be inappropriate "where the cause as-serted is attorney error." 504 U. S., at 11, n. 5.

Four years later, Congress enacted AEDPA and replaced *Keeney*'s cause-and-prejudice standard for evidentiary de-velopment with the even "more stringent requirements" now codified at 28 U. S. C. §2254(e)(2). *Williams* v. *Taylor*, 529 U. S. 420, 433 (2000) (*Michael Williams*). Section 2254(e)(2) provides that, if a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold "an evidentiary hearing on the claim" in only two limited scenarios. Either the claim must rely on (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or (2) "a factual predicate that could not have been previously discovered through the exercise of due dili-gence." §§2254(e)(2)(A)(i), (ii). If a prisoner can satisfy ei-ther of these exceptions, he also must show that further factfinding would demonstrate, "by clear and convincing ev-idence," that "no reasonable factfinder" would have con-victed him of the crime charged. §2254(e)(2)(B). Finally, even if all of these requirements are satisfied, a federal ha-beas court still is not *required* to hold a hearing or take any evidence. Like the decision to grant habeas relief itself, the

decision to permit new evidence must be informed by principles of comity and finality that govern every federal habeas case. Cf. *Brown*, 596 U. S., at \_\_\_–\_\_\_ (slip op., at 13–14).

Even though AEDPA largely displaced *Keeney*, §2254(e)(2) retained "one aspect of *Keeney*'s holding." *Michael Williams*, 529 U. S., at 433. Namely, §2254(e)(2) applies only when a prisoner "has failed to develop the factual basis of a claim." We interpret "fail," consistent with *Keeney*, to mean that the prisoner must be "at fault" for the undeveloped record in state court. 529 U. S., at 432. A prisoner is "at fault" if he "bears responsibility for the failure" to develop the record. *Ibid.*

## III

Respondents concede that they do not satisfy §2254(e)(2)'s narrow exceptions. Nonetheless, the Court of Appeals forgave respondents' failures to develop the state-court record because, in its view, they each received ineffective assistance of state postconviction counsel. We now hold that, under §2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel.

## A

Respondents' primary claim is that a prisoner is not "at fault," *Michael Williams*, 529 U. S., at 432, and therefore has not "failed to develop the factual basis of a claim in State court proceedings," §2254(e)(2), if state postconviction counsel negligently failed to develop the state record for a claim of ineffective assistance of trial counsel. But under AEDPA and our precedents, state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner.

1

As stated above, a prisoner "bears the risk in federal habeas for all attorney errors made in the course of the representation," *Coleman*, 501 U. S., at 754, unless counsel provides "constitutionally ineffective" assistance, *Murray*, 477 U. S., at 488. And, because there is no constitutional right to counsel in state postconviction proceedings, see *Davila*, 582 U. S., at ___ (slip op., at 6), a prisoner ordinarily must "bea[r] responsibility" for all attorney errors during those proceedings, *Michael Williams*, 529 U. S., at 432. Among those errors, a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record.

Both before and after AEDPA, our prior cases have made this point clear. First, in *Keeney*, "material facts had not been adequately developed in the state postconviction court, apparently due to the negligence of postconviction counsel." 504 U. S., at 4 (citation omitted). We required the prisoner to demonstrate cause and prejudice to forgive postconviction counsel's deficient performance, see *id.*, at 11, and recognized that counsel's negligence, on its own, was not a sufficient cause, see *id.*, at 10, n. 5.

Second, in *Michael Williams*, we confirmed that "the opening clause of §2254(e)(2) codifies *Keeney*'s threshold standard of diligence, so that prisoners who would have had to satisfy *Keeney*'s [cause-and-prejudice] test . . . are now controlled by §2254(e)(2)." 529 U. S., at 434. In other words, because *Keeney* held a prisoner responsible for state postconviction counsel's negligent failure to develop the state-court record, the same rule applied under §2254(e)(2). For that reason, "a failure to develop the factual basis of a claim," as §2254(e)(2) requires, "is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner *or the prisoner's counsel*." 529 U. S., at 432 (emphasis added). We then applied that rule and held that state postconviction counsel's "failure to investigate . . . in anything but a cursory manner trigger[ed] the opening

clause of §2254(e)(2)." *Id.*, at 439–440.

Third, in *Holland* v. *Jackson*, 542 U. S. 649 (2004) (*per curiam*), we again held a prisoner responsible for state post-conviction counsel's negligent failure to develop the state-court record. Seven years after the prisoner's conviction, and after he had already been denied state postconviction relief, the prisoner found a new witness to provide impeachment testimony. See *id.*, at 650–651. The prisoner claimed that he discovered the witness so late because "state post-conviction counsel did not heed his pleas for assistance." *Id.*, at 653. Citing *Coleman* and *Michael Williams*, we rejected the prisoner's claim. "Attorney negligence," we held, "is chargeable to the client and precludes relief unless the conditions of §2254(e)(2) are satisfied." 542 U. S., at 653.

In sum, under §2254(e)(2), a prisoner is "at fault" even when state postconviction counsel is negligent. In such a case, a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy §2254(e)(2)'s stringent requirements.

2

Respondents dispute none of this. Instead, they rely almost exclusively on *Martinez*'s holding that ineffective assistance of postconviction counsel can be "cause" to forgive procedural default of a trial-ineffective-assistance claim if a State forecloses direct review of that claim, as Arizona concededly does. See 566 U. S., at 9. Respondents contend that where, per *Martinez*, a prisoner is not responsible for state postconviction counsel's failure to raise a claim, it makes little sense to hold the prisoner responsible for the failure to develop that claim. Thus, respondents propose extending *Martinez* so that ineffective assistance of postconviction counsel can excuse a prisoner's failure to develop the state-court record under §2254(e)(2).

Congress foreclosed respondents' proposed expansion of *Martinez* when it passed AEDPA. *Martinez* decided that,

in the exercise of our "equitable judgment" and "discretion," it was appropriate to modify "[t]he rules for when a prisoner may establish cause to excuse a procedural default." *Id.*, at 13. Such "exceptions" to procedural default "are judge-made rules" that we may modify "only when necessary." *Dretke*, 541 U. S., at 394. Here, however, §2254(e)(2) is a statute that we have no authority to amend. "Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *McQuiggin*, 569 U. S., at 402 (Scalia, J., dissenting); see also *Ex parte Bollman*, 4 Cranch 75, 94 (1807) (Marshall, C. J., for the Court). For example, in *McQuiggin*, we explained that we have no power to layer a miscarriage-of-justice or actual-innocence exception on top of the narrow limitations already included in §2254(e)(2). See 569 U. S., at 395–396 (majority opinion).

The same follows here. We have no power to redefine when a prisoner "has failed to develop the factual basis of a claim in State court proceedings." §2254(e)(2). Before AEDPA, *Keeney* held that "attorney error" during state postconviction proceedings was not cause to excuse an undeveloped state-court record. 504 U. S., at 11, n. 5. And, in *Michael Williams*, we acknowledged that §2254(e)(2) "raised the bar *Keeney* imposed on prisoners who were not diligent in state-court proceedings," 529 U. S., at 433, while reaffirming that prisoners are responsible for attorney error, see *id.*, at 432. Yet here, respondents claim that attorney error alone permits a federal court to expand the federal habeas record. That result makes factfinding more readily available than *Keeney* envisioned pre-AEDPA and ignores *Michael Williams*' admonition that "[c]ounsel's failure" to perform as a "diligent attorney" "triggers the opening clause of §2254(e)(2)." 529 U. S., at 439–440. We simply cannot square respondents' proposed result with AEDPA or our precedents.

Respondents propose that Congress may have actually

invited their judicial update. According to respondents, *Martinez* explained that *Coleman* left open whether ineffective assistance of state postconviction counsel might one day be cause to forgive procedural default, at least in an "initial-review collateral proceeding," *Martinez*, 566 U. S., at 5, "where state collateral review is the first place a prisoner can present a challenge to his conviction," *Coleman*, 501 U. S., at 755. Respondents contend that Congress might have enacted §2254(e)(2) with the expectation that this Court one day would open that door.

We do not agree. First, "[g]iven our frequent recognition that AEDPA limited rather than expanded the availability of habeas relief . . . it is implausible that, without saying so," *Fry* v. *Pliler*, 551 U. S. 112, 119 (2007), Congress intended this Court to liberalize the availability of habeas relief generally, or access to federal factfinding specifically. Second, in *Coleman*, we "reiterate[d] that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation," and surmised that a hypothetical constitutional right to initial-review postconviction counsel could give rise to a corresponding claim for cause. 501 U. S., at 755; see also *Martinez*, 566 U. S., at 8–9. Since then, however, we have repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings. See, *e.g.*, *Davila*, 582 U. S., at ___ (slip op., at 6).

We also reject respondents' equitable rewrite of §2254(e)(2) because it lacks any principled limit. This Court's holding in *Martinez* addressed only one kind of claim: ineffective assistance of trial counsel. See 566 U. S., at 9. We limited our holding in that way to reflect our "equitable judgment" that trial-ineffective-assistance claims are uniquely important. *Id.*, at 12–13. Respondents propose that we similarly should permit factual development under §2254(e)(2) only for trial-ineffective-assistance claims. But §2254(e)(2) applies whenever any state prisoner "failed to develop the factual basis of *a claim*,"

§2254(e)(2) (emphasis added), without limitation to any
specific claim. There would be no reason to limit respond-
ents' reconstruction of §2254(e)(2) as they propose. Unlike
for procedural default, we lack equitable authority to
amend a statute to address only a subset of claims. Thus,
if a prisoner were not "at fault" under §2254(e)(2) simply
because postconviction counsel provided ineffective assis-
tance, *Michael Williams*, 529 U. S., at 432, the prisoner's
blamelessness necessarily would extend to *any claim* that
postconviction counsel negligently failed to develop. Not
even *Martinez* sweeps that broadly.

Finally, setting aside that we lack authority to amend
§2254(e)(2)'s clear text, *Martinez* itself cuts against re-
spondents' proposed result. *Martinez* was "unusually ex-
plicit about the narrowness of our decision." *Trevino*, 569
U. S., at 431 (ROBERTS, C. J., dissenting). The Court left no
doubt that "[t]he rule of *Coleman* governs in *all* but the lim-
ited circumstances recognized here." *Martinez*, 566 U. S.,
at 16 (emphasis added). "This aggressively limiting lan-
guage was not simply a customary nod to the truism that
we decide only the case before us." *Trevino*, 569 U. S., at
432 (ROBERTS, C. J., dissenting) (internal quotation marks
omitted). "It was instead an important part" of the Court's
holding. *Ibid.* In short, *Martinez* foreclosed any extension
of its holding beyond the "narrow exception" to procedural
default at issue in that case. 566 U. S., at 9.

To be sure, *Martinez* recognized that state prisoners often
need "evidence outside the trial record" to support their
trial-ineffective-assistance claims. *Id.*, at 13. But *Martinez*
did not prescribe largely unbounded access to new evidence
whenever postconviction counsel is ineffective, as respond-
ents propose. Rather, *Martinez* recognized our overarching
responsibility "to ensure that state-court judgments are ac-
corded the finality and respect necessary to preserve the in-
tegrity of legal proceedings within our system of federal-
ism." *Id.*, at 9. In particular, the Court explained that its

"holding . . . ought not to put a significant strain on state resources," because a State "faced with the question whether there is cause for an apparent default . . . may answer" that the defaulted claim "is wholly without factual support." *Id.*, at 15–16. That assurance has bite only if the State can rely on the state-court record. Otherwise, "federal habeas courts would routinely be required to hold evidentiary hearings to determine" whether state postconviction counsel's factfinding fell short. *Murray*, 477 U. S., at 487.

The cases under review demonstrate the improper burden imposed on the States when *Martinez* applies beyond its narrow scope. The sprawling evidentiary hearing in *Jones* is particularly poignant. Ostensibly to assess cause and prejudice under *Martinez*, the District Court ordered a 7-day hearing that included testimony from no fewer than 10 witnesses, including defense trial counsel, defense postconviction counsel, the lead investigating detective, three forensic pathologists, an emergency medicine and trauma specialist, a biomechanics and functional human anatomy expert, and a crime scene and bloodstain pattern analyst. See 943 F. 3d, at 1219, 1225–1226. Of these witnesses, only one of the forensic pathologists and the lead detective testified at the original trial. See *id.*, at 1223–1225. The remainder testified on virtually every disputed issue in the case, including the timing of Rachel Gray's injuries and her cause of death. See *id.*, at 1226–1228. This wholesale relitigation of Jones' guilt is plainly not what *Martinez* envisioned.

B

*Martinez* aside, respondents propose a second reading of §2254(e)(2) that supposedly permits consideration of new evidence in their habeas cases. Their interpretation proceeds in two steps. First, respondents argue that because §2254(e)(2) bars only "an evidentiary hearing on the claim,"

a federal court may hold an evidentiary hearing to determine whether there is cause and prejudice. In respondents' view, a so-called "*Martinez* hearing" is not a "hearing *on the claim*." §2254(e)(2) (emphasis added). Second, with that evidence admitted for cause and prejudice, respondents contend that the habeas court may then consider the new evidence to evaluate the merits of the underlying ineffective-assistance claim. By considering already admitted evidence, respondents reason, the habeas court is not holding a "hearing" that §2254(e)(2) otherwise would prohibit. *Ibid.*

There are good reasons to doubt respondents' first point, but we need not address it because our precedent squarely forecloses the second. In *Holland*, we explained that §2254(e)(2)'s "restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing." 542 U. S., at 653 (emphasis deleted). The basis for our decision was obvious: A contrary reading would have countenanced an end-run around the statute. Federal habeas courts could have accepted any new evidence so long as they avoided labeling their intake of the evidence as a "hearing." Therefore, when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in §2254(e)(2) are satisfied.

Respondents all but concede that their argument amounts to the same kind of evasion of §2254(e)(2) that we rejected in *Holland*. They nonetheless object that *Holland* renders many *Martinez* hearings a nullity, because there is no point in developing a record for cause and prejudice if a federal court cannot later consider that evidence on the merits. While we agree that any such *Martinez* hearing would serve no purpose, that is a reason to dispense with *Martinez* hearings altogether, not to set §2254(e)(2) aside.

Thus, if that provision applies and the prisoner cannot satisfy its "stringent requirements," *Michael Williams*, 529 U. S., at 433, a federal court may not hold an evidentiary hearing—or otherwise consider new evidence—to assess cause and prejudice under *Martinez*.

This follows from our decision in *Schriro* v. *Landrigan*, 550 U. S. 465 (2007). There, we held that a federal court, "[i]n deciding whether to grant an evidentiary hearing, . . . must consider whether such a hearing could enable an applicant to prove . . . factual allegations [that] would entitle [him] to federal habeas relief." *Id.*, at 474. "This approach makes eminent sense," for if "district courts held evidentiary hearings without first asking whether the evidence the petitioner seeks to present would satisfy AEDPA's demanding standards, they would needlessly prolong federal habeas proceedings." *Cullen*, 563 U. S., at 208–209 (SOTOMAYOR, J., dissenting). Here, holding a *Martinez* hearing when the prisoner cannot "satisfy AEDPA's demanding standards" in §2254(e)(2) would "prolong federal habeas proceedings" with no purpose. 563 U. S., at 209 (SOTOMAYOR, J., dissenting). And because a federal habeas court may *never* "needlessly prolong" a habeas case, *ibid.*, particularly given the "essential" need to promote the finality of state convictions, *Calderon*, 523 U. S., at 555, a *Martinez* hearing is improper if the newly developed evidence never would "entitle [the prisoner] to federal habeas relief," *Schriro*, 550 U. S., at 474.

C

Ultimately, respondents' proposed expansion of factfinding in federal court, whether by *Martinez* or other means, conflicts with any appropriately limited federal habeas review. In our dual-sovereign system, federal courts must afford unwavering respect to the centrality "of the trial of a criminal case in state court." *Wainwright*, 433 U. S., at 90. That is the moment at which "[s]ociety's resources have

been concentrated . . . in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Ibid.*; see also *Herrera* v. *Collins*, 506 U. S. 390, 416 (1993); *Davila*, 582 U. S., at ___ (slip op., at 8). Such intervention is also an affront to the State and its citizens who returned a verdict of guilt after considering the evidence before them. Federal courts, years later, lack the competence and authority to relitigate a State's criminal case.

The dissent contends that we "overstat[e] the harm to States that would result from allowing" prisoners to develop evidence outside §2254(e)(2)'s narrow exceptions. *Post,* at 17. Not so. Serial relitigation of final convictions undermines the finality that "is essential to both the retributive and deterrent functions of criminal law." *Calderon*, 523 U. S., at 555; see also *Engle*, 456 U. S., at 126–127, and n. 32. Further, broadly available habeas relief encourages prisoners to "'sandba[g]'" state courts by "select[ing] a few promising claims for airing" on state postconviction review, "while reserving others for federal habeas review" should state proceedings come up short. *Murray*, 477 U. S., at 492; see also *Wainwright*, 433 U. S., at 89. State prisoners already have a strong incentive to save claims for federal habeas proceedings in order to avoid the highly deferential standard of review that applies to claims properly raised in state court. See §2254(d); *Harrington*, 562 U. S., at 105. Permitting federal factfinding would encourage yet more federal litigation of defaulted claims.

\*          \*          \*

Because we have no warrant to impose any factfinding beyond §2254(e)(2)'s narrow exceptions to AEDPA's "genera[l] ba[r on] evidentiary hearings," *McQuiggin*, 569 U. S., at 395, we reverse the judgments of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

────────────

No. 20–1009

────────────

DAVID SHINN, DIRECTOR, ARIZONA DEPARTMENT
OF CORRECTIONS, REHABILITATION AND
REENTRY, PETITIONER *v.* DAVID
MARTINEZ RAMIREZ

DAVID SHINN, DIRECTOR, ARIZONA DEPARTMENT
OF CORRECTIONS, REHABILITATION AND
REENTRY, ET AL., PETITIONERS *v.*
BARRY LEE JONES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[May 23, 2022]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and
JUSTICE KAGAN join, dissenting.

The Sixth Amendment guarantees criminal defendants
the right to the effective assistance of counsel at trial. This
Court has recognized that right as "a bedrock principle"
that constitutes the very "foundation for our adversary sys-
tem" of criminal justice. *Martinez* v. *Ryan*, 566 U. S. 1, 12
(2012). Today, however, the Court hamstrings the federal
courts' authority to safeguard that right. The Court's deci-
sion will leave many people who were convicted in violation
of the Sixth Amendment to face incarceration or even exe-
cution without any meaningful chance to vindicate their
right to counsel.

In reaching its decision, the Court all but overrules two
recent precedents that recognized a critical exception to the
general rule that federal courts may not consider claims on
habeas review that were not raised in state court. Just 10
years ago, the Court held that a federal court may consider

a habeas petitioner's substantial claim of ineffective assistance of trial counsel (a "trial-ineffectiveness" claim), even if not presented in state court, if the State barred the petitioner from asserting that claim until state postconviction proceedings, and the petitioner's counsel in those proceedings was also ineffective. See *id.*, at 17; see also *Trevino* v. *Thaler*, 569 U. S. 413, 429 (2013). *Martinez* and *Trevino* establish that such a petitioner is not at fault for any failure to bring a trial-ineffectiveness claim in state court. Despite these precedents, the Court today holds that such a petitioner is nonetheless at fault for the ineffective assistance of postconviction counsel in developing the evidence of trial ineffectiveness in state court. The Court instead holds that a petitioner in these circumstances, having received ineffective assistance of trial and postconviction counsel, is barred from developing such evidence in federal court.

This decision is perverse. It is illogical: It makes no sense to excuse a habeas petitioner's counsel's failure to raise a claim altogether because of ineffective assistance in postconviction proceedings, as *Martinez* and *Trevino* did, but to fault the same petitioner for that postconviction counsel's failure to develop evidence in support of the trial-ineffectiveness claim. In so doing, the Court guts *Martinez*'s and *Trevino*'s core reasoning. The Court also arrogates power from Congress: The Court's analysis improperly reconfigures the balance Congress struck in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) between state interests and individual constitutional rights.

By the Court's telling, its holding (however implausible) is compelled by statute. Make no mistake. Neither AEDPA nor this Court's precedents require this result. I respectfully dissent.

I

The majority sets forth the gruesome nature of the mur-

ders with which respondents were charged. Our Constitution insists, however, that no matter how heinous the crime, any conviction must be secured respecting all constitutional protections. The history of respondents' trials and their state postconviction proceedings illustrates the breakdown in the adversarial system caused by ineffective assistance of counsel, a violation of the Sixth Amendment.

## A

Respondent Barry Lee Jones was charged with the murder of his girlfriend's 4-year-old daughter, Rachel Gray. The State argued that Rachel died as a result of an injury she sustained while in Jones' care. Jones' trial counsel failed to undertake even a cursory investigation and, as a result, did not uncover readily available medical evidence that could have shown that Rachel sustained her injuries when she was not in Jones' care. Having heard none of this evidence, the jury convicted Jones and the trial judge sentenced him to death.

Jones filed for postconviction review in Arizona state court. Under Arizona law, Jones was not permitted to argue on direct appeal that his trial counsel rendered constitutionally ineffective assistance; accordingly, state postconviction review was his first opportunity to raise his trial-ineffectiveness claim. See *State* v. *Spreitz*, 202 Ariz. 1, 3, 39 P. 3d 525, 527 (2002). At this stage, however, Jones was met with another egregious failure of counsel. Arizona state law sets minimum qualifications that attorneys must meet to be appointed in capital cases like Jones', but the Arizona Supreme Court waived those requirements in Jones' case, and the state court appointed postconviction counsel who lacked those qualifications. See *Jones* v. *Ryan*, 327 F. Supp. 3d 1157, 1214 (Ariz. 2018) (citing Ariz. Rev. Stat. Ann. §13–4041 (2019)). Jones' new counsel conducted almost no investigation outside of the evidence in the trial

record. In short, Jones' postconviction counsel failed to investigate the ineffective assistance of Jones' trial counsel. Counsel moved for the appointment of an investigator, but did so under the wrong provision of Arizona law. The motion was denied. Counsel ultimately filed a petition for postconviction relief that failed to advance any argument that Jones' trial counsel was ineffective for failing to investigate the State's medical evidence. Arizona courts denied the petition. See *ante,* at 4–5.

Jones then sought federal habeas relief, at last represented by competent counsel, and alleged that his trial counsel provided ineffective assistance by failing adequately to investigate his case. The District Court held an evidentiary hearing at which Jones presented evidence that the injuries to Rachel could not have been inflicted at the time the State alleged that Jones was with her, and that this evidence would have been readily available to Jones' trial and state postconviction counsel, had they investigated the case. The District Court concluded that Jones' postconviction counsel had rendered ineffective assistance in failing to raise this claim in state postconviction proceedings and therefore held that Jones could raise it for the first time in federal court under *Martinez.* The District Court also relied on this evidence to hold, on the merits, that Jones received ineffective assistance at trial. The court found that there was a "reasonable probability that the jury would not have unanimously convicted [Jones] of any of the counts" if Jones' trial counsel had "adequately investigated and presented medical and other expert testimony to rebut the State's theory" of Jones' guilt. 327 F. Supp. 3d, at 1211.

Arizona moved to stay the granting of the habeas writ by arguing that 28 U. S. C. §2254(e)(2), a provision enacted as part of AEDPA, barred the District Court from considering on the merits the evidence that Jones developed to satisfy *Martinez*'s requirements. The District Court denied the motion, and the Ninth Circuit affirmed in relevant part.

Relying on *Martinez*'s recognition that "'[c]laims of ineffective assistance at trial often require investigative work,'" the Ninth Circuit concluded that "§2254(e)(2) does not prevent a district court from considering new evidence, developed to overcome a procedural default under *Martinez* v. *Ryan*, when adjudicating the underlying claim on de novo review." 943 F. 3d 1211, 1222 (2019) (quoting *Martinez*, 566 U. S., at 11).

B

Respondent David Ramirez was convicted for the capital murders of his girlfriend and her daughter. At the sentencing phase, the state court appointed a psychologist to conduct a mental health evaluation. Ramirez's counsel failed to provide the psychologist with evidence that Ramirez had an intellectual disability and failed to develop a claim of intellectual disability to present in mitigation against the imposition of a death sentence and in support of the imposition of a sentence of life without parole. Ramirez was sentenced to death.

As in Jones' case, an Arizona state court appointed Ramirez counsel for his state postconviction claim. And as in Jones' case, state postconviction proceedings were Ramirez's first opportunity to raise a claim of trial ineffectiveness. Ramirez's postconviction attorney, however, did not conduct any investigation beyond the existing trial record, despite being aware of indications that Ramirez might have intellectual disabilities, including that his mother drank when she was pregnant with him and that he demonstrated developmental delays as a child. Nor did Ramirez's postconviction counsel argue that Ramirez's trial counsel provided ineffective assistance by failing to develop and present this mitigating evidence. Arizona courts denied Ramirez's postconviction petition.

Citing "'concerns regarding the quality'" of Ramirez's

prior counsel, a Federal District Court appointed the Ari-
zona Federal Public Defender to represent him in federal
habeas proceedings. *Ramirez* v. *Ryan*, 937 F. 3d 1230, 1238
(CA9 2019). In his habeas petition, Ramirez raised a claim
concerning the ineffectiveness of his trial counsel. In sup-
port of his claim, Ramirez submitted evidence from family
members, whom trial counsel and state postconviction
counsel had never contacted, revealing the depths of abuse
and neglect Ramirez experienced as a child and the life-long
manifestations of his possible disability. The evidence
showed that Ramirez grew up eating on the floor and sleep-
ing on dirty mattresses in houses filthy with animal feces;
that Ramirez's mother would beat him with electrical cords;
and that Ramirez displayed multiple apparent developmen-
tal delays, including "delayed walking, potty training, and
speech" and inability to maintain basic hygiene or to use
utensils to eat. *Id.*, at 1239. In addition, the court-ap-
pointed psychologist who evaluated Ramirez during the
sentencing phase of trial averred to the habeas court that if
trial counsel had provided him with Ramirez's school rec-
ords and prior IQ scores, he would have thought they sug-
gested intellectual disability and insisted on more compre-
hensive testing.[1] Finally, Ramirez's trial counsel submitted
an affidavit stating that she had not been "prepared to han-
dle 'the representation of someone as mentally disturbed as
. . . Ramirez'" and explaining that the evidence from

---

[1] This evidence would have been relevant for the jurors' penalty delib-
erations. Arizona law requires the penalty phase jury to consider, in de-
ciding whether to impose a death sentence, certain "mitigating circum-
stances," including the "defendant's capacity to appreciate the
wrongfulness of his conduct." Ariz. Rev. Stat. Ann. §13–751(G)(1). The
Constitution guarantees convicted capital defendants the right to pre-
sent mitigating evidence. See *Eddings* v. *Oklahoma*, 455 U. S. 104
(1982).

Ramirez's family members, had she uncovered it in an investigation, "'would have changed the way [she] handled both [Ramirez's] guilt phase and his sentencing phase.'" *Id.*, at 1240. In light of this evidence, Ramirez sought an opportunity to develop his trial-ineffectiveness claim further.[2]

The District Court denied relief on Ramirez's trial-ineffectiveness claim and declined to allow further evidentiary development. On appeal, Arizona conceded that Ramirez's postconviction counsel performed deficiently. The Ninth Circuit reversed and remanded, holding that Ramirez had satisfied the requirements of *Martinez* because postconviction counsel had provided ineffective representation and Ramirez's trial-ineffectiveness claim was substantial. The Ninth Circuit directed the District Court to allow evidentiary development of Ramirez's trial-ineffectiveness claim, recognizing that he had been "precluded from such development because of his post-conviction counsel's ineffective representation." 937 F. 3d, at 1248.

## II

*Martinez* and *Trevino* afford habeas petitioners like Jones and Ramirez the opportunity to bring certain trial-ineffectiveness claims for the first time in federal court. The question before the Court is whether Jones and Ramirez can make good on that opportunity by developing evidence in support of these claims, or whether AEDPA nevertheless requires them to rely on the state-court records, constructed by ineffective trial and postconviction

───────────
[2] The District Court initially denied Ramirez's petition, and Ramirez appealed. While his appeal was pending in the Ninth Circuit, this Court decided *Martinez* v. *Ryan*, 566 U. S. 1 (2012), and the Ninth Circuit remanded Ramirez's appeal to the District Court in light of that decision. See App. 452–453. On remand, the District Court ordered supplemental briefing, and Ramirez submitted affidavits from his family members and trial counsel in support of his trial-ineffectiveness claim. See *id.,* at 454–455, 473–474.

counsel, because they "failed to develop the factual basis of [the ineffective assistance] claim[s] in State court proceedings." 28 U. S. C. §2254(e)(2).

Under this Court's precedents, the answer is clear. *Martinez* and *Trevino* establish that petitioners are not at fault for any failure to raise their claims in state court in these circumstances. Other precedents hold that AEDPA's §2254(e)(2)'s "failed to develop" language, too, incorporates a threshold requirement that the petitioner be at fault for not developing evidence. A petitioner cannot logically be faultless for not bringing a claim because of postconviction counsel's ineffectiveness, yet at fault for not developing its evidentiary basis for exactly the same reason.

A

This Court's precedents, culminating in *Martinez* and *Trevino*, explain the circumstances under which habeas petitioners are deemed accountable for their attorneys' failures to present claims in state court. A petitioner who does not properly present a claim in a state proceeding generally may not raise the claim in federal court, because the claim has been "procedurally defaulted." See, *e.g., Murray* v. *Carrier*, 477 U. S. 478, 486 (1986).

A federal court, however, can excuse a procedural default and permit a petitioner to raise a claim for the first time in federal court if the petitioner can "demonstrate cause for the procedural default in state court and actual prejudice as a result of the alleged violation of federal law." *Maples* v. *Thomas*, 565 U. S. 266, 280 (2012) (internal quotation marks and alterations omitted). This Court has held that "[c]ause for a procedural default exists where something external to the petitioner . . . that cannot fairly be attributed to him impeded his efforts to comply with the State's procedural rule." *Ibid.* (internal quotation marks and alterations omitted).

As a general matter, attorney error does not constitute

cause to excuse procedural default because courts attribute attorneys' errors to their clients. *Coleman* v. *Thompson*, 501 U. S. 722, 753 (1991). In certain situations, however, attorney error will instead "be seen as an external factor" and therefore constitute cause. *Id.,* at 754. In *Maples*, we held that where an attorney abandoned his client without notice, "principles of agency law and fundamental fairness" required finding cause to excuse a procedural default, as the petitioner had been "disarmed by extraordinary circumstances quite beyond his control." 565 U. S., at 289. In *Coleman*, we explained that "[a]ttorney error that constitutes ineffective assistance of counsel" similarly demonstrates cause to excuse procedural default in the context of a direct appeal. 501 U. S., at 753–754. *Coleman* explained that error that "constitutes a violation of petitioner's right to counsel . . . must be seen as an external factor, *i.e.,* 'imputed to the State'" because the Sixth Amendment places the burden of guaranteeing effective assistance of counsel on the State. *Id.,* at 754.

*Coleman* left unanswered the question whether ineffective assistance of counsel at the postconviction stage, where defendants generally do not have a constitutional right to counsel, could also constitute cause to excuse default. See *id.*, at 755. This question is critical in Arizona and other States that do not allow defendants to raise trial-ineffectiveness claims on direct appeal, where individuals are constitutionally entitled to effective counsel, and instead require them to raise these claims for the first time in collateral proceedings, in which this Court has not recognized a constitutional right to counsel.

*Martinez*, 566 U. S. 1, held that in these States, postconviction counsel's failure to raise a substantial trial-ineffectiveness claim could constitute cause to excuse a procedural default. The Court observed that where a state collateral proceeding is the first time that a petitioner can press a trial-ineffectiveness claim, the collateral proceeding is "the

equivalent of a prisoner's direct appeal," and constitutes the petitioner's "'one and only appeal'" as to that claim. *Id.,* at 8, 11 (quoting *Coleman*, 501 U. S., at 756). Because this result was occasioned by the State's "deliberat[e] cho[ice] to move [such] claims outside of the direct-appeal process, where counsel is constitutionally guaranteed," the Court held that the general attorney-attribution rule did not apply where postconviction counsel rendered ineffective assistance, just as it would not if appellate counsel on direct review had done so. *Martinez*, 566 U. S., at 13–14, 16. Instead, *Martinez* held, for a habeas petitioner with a "substantial" underlying trial-ineffectiveness claim who also has the misfortune of being represented by ineffective postconviction counsel, the failure of postconviction counsel to raise the trial-ineffectiveness claim is not properly attributable to the petitioner. *Id.,* at 14.

A year later, in *Trevino*, 569 U. S. 413, the Court reaffirmed and extended *Martinez*'s core holding. *Trevino* held that where a State does not offer "a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal," a defendant whose collateral-review counsel renders ineffective assistance has demonstrated cause to excuse the procedural default of his trial-ineffectiveness claim. 569 U. S., at 428.[3]

B

There is no dispute here that respondents' trial-ineffectiveness claims clear the procedural default hurdle under *Martinez* and *Trevino*. The question is whether a habeas petitioner can be faultless for a procedural default under

---

[3] While *Martinez* analyzed a state statutory regime that expressly required defendants to raise an ineffective-assistance-of-trial-counsel claim on collateral review, *Trevino* confronted a state statutory regime that left open the theoretical possibility of raising such a claim on direct appeal, but made it "'virtually impossible'" for defendants to do so. 569 U. S., at 423.

*Martinez* and nonetheless barred by AEDPA's §2254(e)(2) from seeking an evidentiary hearing in federal court, subject to exceptions not applicable here, because the petitioner "failed to develop the factual basis of [the procedurally defaulted] claim in State court proceedings."

Precedent establishes that §2254(e)(2) incorporates a threshold, fault-based "fail[ure] to develop" standard that must be understood in conjunction with the fault-based reasoning in *Martinez.* In *Williams* v. *Taylor*, 529 U. S. 420 (2000), this Court examined what it means to have "failed to develop the factual basis of a claim" under §2254(e)(2). The Court concluded that this language imposes a fault-based standard, meaning that it erects a bar only to those who bear some responsibility for a lack of evidentiary development in state-court proceedings. The Court acknowledged that "fail" is "sometimes used in a neutral way, not importing fault or want of diligence." *Id.,* at 431. As a matter of ordinary meaning, however, the Court concluded that "fail" in §2254(e)(2) connotes "some omission, fault, or negligence." *Ibid.* The Court explained that "a person is not at fault when his diligent efforts to perform an act are thwarted" by an external force. *Id.,* at 432.

*Williams* found further support for its fault-based reading of "failed to develop" in pre-AEDPA cases that foreshadowed the language of §2254(e)(2). Specifically, *Williams* noted the similarity between the text of §2254(e)(2) and the language of the Court's decision in *Keeney* v. *Tamayo-Reyes*, 504 U. S. 1 (1992). The *Williams* Court reasoned that when it enacted AEDPA, Congress had "raised the bar *Keeney* imposed on prisoners who were *not* diligent" (*i.e.,* those who were at fault) "in state-court proceedings." 529 U. S., at 433 (emphasis added). At the same time, however, "the opening clause of §2254(e)(2) codifies *Keeney*'s threshold standard of diligence." *Id.,* at 434. Phrased differently, under AEDPA, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed

to develop' the facts under §2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements." *Id.,* at 437.

The reasoning of *Martinez* and *Trevino* applies with equal force to the threshold diligence/fault standard of *Keeney*, *Williams*, and §2254(e)(2). Under *Williams*, whether petitioners who satisfy *Martinez* are nevertheless subject to §2254(e)(2) turns on whether they were at fault for not developing evidence in support of their trial-ineffectiveness claims in state postconviction proceedings. All agree that a habeas petitioner is not at fault when the responsibility for an error is properly imputed to the State or to some other external factor. *Martinez* cases are among the rare ones in which attorney error constitutes such an external factor. That is because a State's "deliberat[e] cho[ice]" to move trial ineffectiveness claims outside of direct appeal and into post-conviction review "significantly diminishes prisoners' ability to file such claims." *Martinez*, 566 U. S., at 13. There is nothing nefarious about this choice, but it is "not without consequences." *Ibid.* Together, *Martinez*, *Trevino*, and *Williams* demonstrate that when a State both provides a criminal defendant with ineffective trial counsel and decides to remove his trial-ineffectiveness claim from appellate review, postconviction counsel's ineffectiveness cannot fairly be attributed to the defendant, and he therefore has not "failed to develop the factual basis of [his] claim." §2254(e)(2).

Any other reading hollows out *Martinez* and *Trevino*. *Martinez* repeatedly recognized that to prove a trial-ineffectiveness claim (or even to show that it is "substantial"), habeas petitioners frequently must introduce evidence outside of the trial record. See, *e.g.,* 566 U. S., at 13 ("Ineffective-assistance claims often depend on evidence outside the trial record"). Ineffective-assistance claims frequently turn on errors of omission: evidence that was not obtained, wit-

nesses that were not contacted, experts who were not retained, or investigative leads that were not pursued. Demonstrating that counsel failed to take each of these measures by definition requires evidence beyond the trial record. See *Trevino*, 569 U. S., at 413 (observing that "'the inherent nature of most ineffective assistance'" claims means that the "trial court record will often fail to 'contai[n] the information necessary to substantiate' the claim"); Brief for Federal Defender Capital Habeas Units as *Amici Curiae* 4–6. Indeed, the very reason States like Arizona might choose to reserve a trial-ineffectiveness claim for a collateral proceeding is to allow development of the factual basis for the claim. *Martinez*, 566 U. S., at 13. To hold a petitioner at fault for not developing a factual basis because of postconviction counsel's ineffectiveness in the *Martinez* context, however, would be to eliminate altogether such evidentiary development and doom many meritorious trial-ineffectiveness claims that satisfy *Martinez*. Such a rule is not only inconsistent with the reasoning of *Martinez* and *Trevino* but renders those decisions meaningless in many, if not most, cases.

C

Applying this interpretation of §2254(e)(2) here makes clear that Jones and Ramirez are not at fault for their attorneys' failures to develop the state-court record. In Jones' case, the District Court found, and the Ninth Circuit agreed, that Jones satisfied the demanding requirements of *Martinez*: Arizona appointed postconviction counsel who did not meet the minimum qualifications for appointment and who failed to raise a substantial (indeed, meritorious) trial-ineffectiveness claim. In Ramirez's case, too, the Ninth Circuit held that postconviction counsel was ineffective for failing to investigate Ramirez's upbringing (despite clear indications of his disability) and for failing to raise or develop a substantial claim of trial ineffectiveness. The

lower courts thus held that both respondents satisfied the demanding requirements of *Martinez*, holdings that the Court does not question.

By definition, Jones and Ramirez are not at fault for their state postconviction counsel's failures to develop evidence. Jones and Ramirez acted diligently, but their attorneys' errors, paired with the State's choice of how to structure their review proceedings, constituted external impediments. As a result, Jones and Ramirez have not "failed to develop" the factual bases of their claims, and AEDPA's §2254(e)(2), properly interpreted, poses no bar to evidentiary development in federal court.

## III

Rejecting the teachings of *Martinez* and *Trevino*, the Court adopts an irrational reading of §2254(e)(2). The Court begins with the uncontested proposition that, in the ordinary case, a habeas petitioner "'must bear the risk of attorney error.'" *Ante*, at 11 (quoting *Coleman*, 501 U. S., at 753). From there, the Court leaps to the conclusion that a petitioner is at fault for not developing the evidentiary record on a trial-ineffectiveness claim even if that lack of development was the result of his postconviction counsel's ineffective assistance. *Ante*, at 12.

The Court's analysis rests on two fundamental errors. First, the Court eviscerates *Martinez* and *Trevino* and mischaracterizes other precedents. Second, the Court relies upon its own mistaken understanding of AEDPA's policies and the state interests at issue, recycling claims rejected by the *Martinez* Court and ignoring the careful balance struck by Congress. In doing so, the Court gives short shrift to the egregious breakdowns of the adversarial system that occurred in these cases, breakdowns of the type that federal habeas review exists to correct.

### A

The doctrinal consequence of the Court's distortion of precedent is to render *Martinez* and *Trevino* dead letters in the mine run of cases. As explained, those precedents are premised on the understanding that a habeas petitioner is not responsible for a postconviction attorney's ineffective failure to assert a substantial trial-ineffectiveness claim in States that do not offer petitioners a meaningful opportunity to raise such claims on direct appeal. The Court, however, does not grapple with this logic on its own terms. Instead, the Court limits *Martinez* and *Trevino* to their facts, emptying them of all meaning in the ordinary case (where, as those precedents explain, a trial-ineffectiveness claim will necessarily rely on evidence beyond the trial record). Tellingly, the Court relies on the *dissent* in *Trevino* to support its disregard of these cases' reasoning. See *ante,* at 18.

The Court's analysis also rests on a misplaced view of *Williams*. The Court fixates on *Williams*' statement that §2254(e)(2) "raised the bar *Keeney* imposed on prisoners who were not diligent in state-court proceedings." 529 U. S., at 433; see *ante,* at 16. The Court emphasizes the first part of that statement while ignoring its qualification: that §2254(e)(2) raised the bar for "prisoners who were not diligent." In other words, it is undisputed that the "bar for excusing a prisoner's failure to develop the state-court record" is an onerous one, *ante,* at 12; the question is whether, in this context, a habeas petitioner has failed to develop the record in the first place. *Martinez* and *Trevino* make clear that habeas petitioners in Jones' and Ramirez's position do not lack diligence and are not at fault for the failures of their ineffective trial and postconviction counsel.

The Court further charges that respondents' interpretation of §2254(e)(2) "lacks any principled limit." *Ante,* at 17. Here again, the Court resuscitates a complaint that previously was relegated to a dissent. See *Martinez*, 566 U. S.,

at 19 (Scalia, J., dissenting) ("[N]o one really believes that [the holding of *Martinez*] will remain limited to ineffective-assistance-of-trial-counsel cases"). The complaint is just as unavailing now that it has captured a majority. Respondents' interpretation only affects habeas petitioners raising substantial trial-ineffectiveness claims in the subset of States that limit such claims to postconviction review, just as *Martinez* did. In that context, postconviction review is a prisoner's "one and only appeal" of a trial-ineffectiveness claim, *Coleman*, 501 U. S., at 756 (internal quotation marks omitted; emphasis deleted), and the ineffective assistance of counsel at that stage forecloses review of a crucially important constitutional right. Any assertion that respondents' interpretation of the statute would blow the door open to myriad other claims is hyperbole that this Court, until today, consistently has rejected.

Finally, the Court finds it implausible that Congress would have considered the threshold diligence inquiry under §2254(e)(2) to account for the *Martinez* context. *Ante*, at 16–17. But Congress legislated against the backdrop of *Coleman*. *Coleman*, in turn, made clear (decades before *Martinez*) that in certain circumstances where attorney error could be "seen as an external factor, *i.e.*, 'imputed to the State,'" including the ineffective assistance of counsel on direct appeal, the prisoner would not properly be deemed at fault. *Coleman*, 501 U. S., at 754. Moreover, it is not uncommon for Congress to adopt statutory language that incorporates an evolving judicial doctrine, see, *e.g., Kimble* v. *Marvel Entertainment, LLC*, 576 U. S. 446, 461 (2015), and there is no reason this Court should second-guess Congress' choice to incorporate a judicially created diligence doctrine here.

## B

Much of the Court's opinion focuses not on the text of §2254(e)(2), nor on the relevant precedents, but on what the

Court views as AEDPA's unyielding purpose: ensuring that federal courts "afford unwavering respect" to state court criminal proceedings. *Ante,* at 21; see also *ante*, at 6–9, 18–19, 20–21. The Court seriously errs by suggesting that AEDPA categorically prioritizes maximal deference to state-court convictions over vindication of the constitutional protections at the core of our adversarial system.

It is of course true that AEDPA's rules are designed to "ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez*, 566 U. S., at 9. The enacting Congress, however, did not pursue these aims at all costs. AEDPA does not render state judgments unassailable, but strikes a balance between respecting state-court judgments and preserving the necessary and vital role federal courts play in "guard[ing] against extreme malfunctions in the state criminal justice systems." *Harrington* v. *Richter*, 562 U. S. 86, 102–103 (2011) (internal quotation marks omitted). Indeed, " 'Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty.' " *Christeson* v. *Roper*, 574 U. S. 373, 377 (2015) (*per curiam*). Absent that role, what this Court regularly calls "the Great Writ" hardly would be worthy of the label. See, *e.g., Holland* v. *Florida*, 560 U. S. 631, 649 (2010).

The Court today supplants the balance Congress struck with its single-minded focus on finality. In doing so, it overstates the harm to States that would result from allowing petitioners to develop facts in support of *Martinez* claims. See *ante,* at 18. Importantly, *Martinez* applies only where the underlying claim is one of trial ineffectiveness, and only if a petitioner demonstrates that the claim is "substantial." 566 U. S., at 14. The Court reaches to support its holding by yet again repackaging a dissenter's warning, this time

that *Martinez* would "put a significant strain on state re-
sources." *Id.,* at 22 (opinion of Scalia, J.). Nearly a decade
of experience with *Martinez*, however, has proved this un-
founded prediction false. In a 9-year sample of three States
(Florida, Pennsylvania, and South Carolina), federal courts
adjudicated 1,200 habeas petitions raising *Martinez* claims.
See Brief for Habeas Scholars as *Amici Curiae* 7–8. These
courts held evidentiary hearings in less than two percent of
these cases. *Ibid.* The lower federal courts, in other words,
are perfectly capable of policing *Martinez*'s limits. There is
no reason to expect that to change from an affirmance here.

In the same vein, the Court bemoans the "sprawling evi-
dentiary hearing" conducted by the District Court in Jones'
case. *Ante*, at 19. Of course, the scope of the District Court's
hearing (including evidence from medical experts, forensic
experts, law enforcement personnel, and others) was neces-
sary only because trial counsel failed to present any of that
evidence during the guilt phase of Jones' capital case. Far
from constituting an inappropriate and "wholesale relitiga-
tion of Jones's guilt," *ibid.*, the District Court's hearing was
wide-ranging precisely because the breakdown of the adver-
sarial system in Jones' case was so egregious.

The Court suggests that evidentiary hearings like Jones'
will "encourag[e] prisoners" to "'sandba[g]' state courts" by
strategically holding back claims from state postconviction
review to present them for the first time in federal court.
*Ante,* at 22. That claim is odd, particularly in this context.
It is a State's decision to divert trial-ineffectiveness claims
from direct appeal to postconviction review, and then to pro-
vide ineffective postconviction counsel, that results in the
failure to raise or develop such claims before state courts.
No habeas petitioner or postconviction counsel could possi-
bly perceive a strategic benefit from failing to raise a meri-
torious trial-ineffectiveness claim in an available forum.
Indeed, the whole thrust of Jones' and Ramirez's argument
is that their Sixth Amendment claims were so obvious that

their state postconviction attorneys were ineffective in failing to assert them.

On the other side of the ledger, the Court understates, or ignores altogether, the gravity of the state systems' failures in these two cases. To put it bluntly: Two men whose trial attorneys did not provide even the bare minimum level of representation required by the Constitution may be executed because forces outside of their control prevented them from vindicating their constitutional right to counsel. It is hard to imagine a more "extreme malfunctio[n]," *Harrington*, 562 U. S., at 102 (internal quotation marks omitted), than the prejudicial deprivation of a right that constitutes the "foundation for our adversary system," *Martinez*, 566 U. S., at 12.

Nor will the damage be limited to these two cases. Even before *Martinez*, this Court recognized that a trial record is "often incomplete or inadequate" to demonstrate inadequate assistance of counsel. *Massaro* v. *United States*, 538 U. S. 500, 505 (2003). A trial record "may contain no evidence of alleged errors of omission," like a failure sufficiently to investigate a case. *Ibid.* For a court to discern "whether [any] alleged error was prejudicial," too, it is obvious that "additional factual development" may be required. *Ibid.* The on-the-ground experience of capital habeas attorneys confirms this commonsense notion. See Brief for Federal Defender Capital Habeas Units as *Amici Curiae* 3–4. The Court's decision thus reduces to rubble many habeas petitioners' Sixth Amendment rights to the effective assistance of counsel.

Contrary to the Court's account, the fundamental fairness concerns that arise from this particular type of breakdown are not unconditionally eclipsed by the need to accord finality and respect to state-court judgments. *Ante,* at 18. Finality interests are at their apex when the "essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged."

*Strickland* v. *Washington*, 466 U. S. 668, 694 (1984). The effective assistance of counsel is one of those essential elements. See *Martinez*, 566 U. S., at 12. When the effective assistance of counsel is absent, leaving a severely diminished basis for presuming fairness and accuracy, "finality concerns are somewhat weaker." *Strickland*, 466 U. S., at 694. Neither statute nor precedent supports the Court's assertion that the virtues of finality override fundamental fairness to such a degree that meaningful review of life-or-death judgments obtained through such deeply flawed proceedings should be foreclosed.

Ultimately, the Court's decision prevents habeas petitioners in States like Arizona from receiving any guaranteed opportunity to develop the records necessary to enforce their Sixth Amendment right to the effective assistance of counsel. For the subset of these petitioners who receive ineffective assistance both at trial and in state postconviction proceedings, the Sixth Amendment's guarantee is now an empty one. Many, if not most, individuals in this position will have no recourse and no opportunity for relief. The responsibility for this devastating outcome lies not with Congress, but with this Court.

*          *          *

Text and precedent instruct that in States that limit review of trial-ineffectiveness claims to postconviction proceedings, habeas petitioners who receive ineffective assistance of both trial and postconviction counsel are not responsible for any failure to raise their substantial claim of trial ineffectiveness, nor for any "fail[ure] to develop" evidence in support of that claim under AEDPA's §2254(e)(2). By holding otherwise, the Court not only extinguishes the central promise of *Martinez* and *Trevino*, but it makes illusory the protections of the Sixth Amendment. I respectfully dissent.