**Robert G. KAVANAGH, Petitioner–Appellant,**

**v.**

**Gerald BERGE, Superintendent, Fox Lake Correctional Institution, and James Doyle, Attorney General for the State of Wisconsin, Respondents–Appellees.**

No. 95–1795.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1995.

Decided Jan. 10, 1996.

---

T. Christopher Kelly (argued), Reynolds, Thomas, Kelly & Habermehl, Madison, WI, for Robert G. Kavanagh.

Daniel J. O'Brien (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Gerald A. Berge, James E. Doyle, Attorney General of the State of Wisconsin.

Before BAUER, EASTERBROOK, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Robert G. Kavanagh appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus ("habeas petition"). We affirm.

## BACKGROUND

In 1989, a jury convicted Kavanagh of one count of first-degree sexual assault on his young nephew. The jury acquitted Kavanagh of another sexual assault count involving the same victim. The trial court sentenced Kavanagh to 15 years imprisonment. After exhausting his state post-conviction remedies, Kavanagh filed a federal habeas petition. In the petition, Kavanagh argued that: (1) his trial attorney, Christopher Buslee, had provided ineffective assistance in a variety of ways; (2) Kavanagh's absence from several hearings was unconstitutional;

and (3) he was entitled to an evidentiary hearing in the district court on his ineffective assistance of counsel claim. The district court referred the case to a magistrate judge who issued an exhaustive report and recommendation denying all of Kavanagh's claims. The district court adopted the magistrate judge's findings of fact and conclusions of law, with one minor factual exception, and denied Kavanagh's habeas corpus petition. The magistrate judge's report and recommendation analyzes Kavanagh's claims in exhaustive factual detail. Such detail is unnecessary for our review, and we will discuss the pertinent facts as they are relevant to our analysis.

### ANALYSIS

Federal courts are authorized to grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. § 2254. In reviewing the state court proceedings, we presume that the factual findings of the state court are correct if those findings are made after a hearing on the merits and are fairly supported by the record. *Armstrong v. Young*, 34 F.3d 421, 426 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1369, 131 L.Ed.2d 224 (1995). We review the district court's findings of fact under a clearly erroneous standard. *Griffin v. Camp*, 40 F.3d 170, 172 (7th Cir.1994). We review the merits of the district court's legal conclusions *de novo. Rodriguez v. Peters,* 63 F.3d 546, 554 (7th Cir.1995). In particular, we review *de novo* the district court's legal conclusion that Kavanagh's counsel rendered effective assistance. *U.S. ex rel. Partee v. Lane,* 926 F.2d 694, 700 (7th Cir.1991), *cert. denied,* 502 U.S. 1116, 112 S.Ct. 1230, 117 L.Ed.2d 464 (1992).

### A. *Ineffective Assistance of Counsel*

To succeed on his claim for ineffective assistance of counsel, Kavanagh must demonstrate that his counsel's performance was deficient and that the deficient performance prejudiced Kavanagh. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient if it falls below an "ob-jective standard of reasonableness" under "prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. In order for Kavanagh to establish prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. In sum, counsel's errors must result in a proceeding that is "fundamentally unfair or unreliable." *Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993).

We examine the performance prong of the *Strickland* test through a "highly deferential lens, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Partee,* 926 F.2d at 700. We look at the totality of counsel's performance and will not take any of his actions out of context in order to ascertain whether they are, by themselves, ineffective. *Biggerstaff v. Clark,* 999 F.2d 1153, 1155 (7th Cir.1993). Furthermore, we employ a "strong presumption of reliability" of the original verdict in examining the prejudice prong of ineffective assistance. *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069.

Kavanagh focuses on six examples of Buslee's alleged incompetence. We need discuss only two of them in detail. Initially, we note that Kavanagh all but ignores the fact that his allegedly ineffective counsel convinced the jury to acquit Kavanagh on one of the two charged counts of sexual assault. This failing is symptomatic of Kavanagh's misreading of *Strickland* in that he fails to see the forest for the trees. To reiterate, we look at overall performance, not merely highlights, or more precisely, lowlights.

The central issue at trial was the victim's credibility. Both the six-year old victim and Kavanagh testified. The victim testified that Kavanagh sodomized him in a shed on his grandmother's property. Kavanagh also threatened him with a knife and showed him pornographic magazines. The victim's parents (the victim's mother is Kavanagh's sister) corroborated the victim's testimony by relating his fear of his uncle, various other behavioral problems, and what the victim had told them about the assaults. The victim's treating physician, Dr. Gerald

E. Porter, testified about his initial meeting with the victim where the victim described the assaults. Finally, the prosecution presented an expert on child abuse, Dr. Frederick W. Theye, who testified about the general characteristics of children who have been sexually abused.

The defense theory at trial was that young children are especially susceptible to suggestion and fantasy, and that no assault had occurred. Kavanagh testified in his own behalf and denied the assaults. The defense also put on testimony that showed that the victim told lies, had seen x-rated movies at home, got along well with Kavanagh, and that the victim's mother was delusional. Finally, the defense put on an expert witness, Dr. Ralph C. Underwager, who testified that Kavanagh did not fit the profile of a pedophile and that overzealous questioning by adults produces false accusations of child abuse.

At oral argument, Kavanagh's attorney identified as the most extreme example of Buslee's ineffectiveness his failure to adequately cross-examine Dr. Porter. Kavanagh contends that Buslee failed to demonstrate that Dr. Porter asked the victim inappropriate "leading" questions, and that Buslee therefore missed an opportunity to undermine the victim's credibility. Leaving aside whether we agree with Kavanagh's characterization of Dr. Porter's questioning of the victim, this argument has no merit.[1] It is true that Buslee did not utilize exhaustive cross-examination to show that Dr. Porter had questioned the victim improperly. However, Buslee produced an expert, Dr. Underwager, who testified for the defense about correct and incorrect questioning techniques. Furthermore, Buslee argued at length that Dr. Porter and certain police officers had used improper questioning. Therefore, irrespective of his cross-examination of Dr. Porter, Buslee's overall handling of this issue was competent.

Next, Kavanagh argues that Buslee was ineffective because he failed to elicit evidence that the victim allegedly also had been assaulted by his cousin. Kavanagh contends that this would have emphasized the victim's lack of credibility. The district court found that this "failure" was not ineffective because there was no way for Buslee to introduce this evidence, and because this evidence would have undercut Buslee's trial strategy of denying any assault. We agree. Kavanagh has produced affidavits from several of his relatives that attest to the "fact" that the victim had been assaulted earlier by a cousin. However, none of the affidavits alleges that there was any sexual aspect to this alleged assault. This evidence would not add anything to Kavanagh's defense. Furthermore, the affidavits contain triple hearsay, probably inadmissible at trial. Buslee's failure to offer inadmissible evidence is not ineffective assistance.

Finally, Kavanagh attacks Buslee's "failure" to impeach the victim's credibility at trial. For example, he argues that Buslee should have elicited evidence contradicting the victim's claim that Kavanagh used a BB gun. The problem with this argument is that Buslee successfully, and wisely, moved to exclude all "other acts" evidence at trial. This strategy prevented the victim from testifying about various other allegations against Kavanagh. Eliciting evidence about the BB gun could have opened the door to all sorts of evidence that Buslee (and Kavanagh) wanted excluded. Therefore, given the trial court's exclusion of "other acts" evidence, it was reasonable for Buslee to not elicit evidence about the BB gun.

We concede that Buslee did not tie up every loose end—no representation is ever perfect. However, we agree with the district court's conclusion that Buslee's representation was not constitutionally infirm:

[A] review of the trial transcript does not leave me with the sense that trial counsel missed many opportunities to portray the

---

1. It is also not entirely clear that leading questions are always inappropriate in dealing with young children. *See, e.g.,* John E.B. Meyers et al., *Expert Testimony in Child Sexual Abuse Litigation,* 68 Neb.L.Rev. 1, 100 (1989). ("Develop-

mental limitations of young children sometimes necessitates careful use of leading and specific questions ... that might be inappropriate with older children and adults.")

victim as overly imaginative, easily influenced by the questioning of others, and unreliable. Child sexual assault cases are not easy cases, either to prosecute or to defend. Petitioner's representation may not have been perfect, but it was well within the bounds of constitutionally adequate assistance.

(Dist.Ct.Memorandum Opinion at 5–6). We conclude that Buslee adequately challenged the victim's credibility at trial and that Kavanagh's claim of ineffective assistance of counsel fails.

### B. *Evidentiary Hearing*

■ We review *de novo* the district court's denial of Kavanagh's request for an evidentiary hearing on his ineffective assistance of counsel claim. *Drake v. Clark*, 14 F.3d 351, 355 (7th Cir.1994). Kavanagh argues that he was entitled under 28 U.S.C. § 2254(d) to an evidentiary hearing in the district court because he did not receive a "full and fair evidentiary hearing in a state court." *Townsend v. Sain*, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), overruled in other respects by *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Milone v. Camp*, 22 F.3d 693, 699 n. 3 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 720, 130 L.Ed.2d 626 (1995). *Townsend* delineated a number of circumstances that require an evidentiary hearing. Kavanagh argues that three of them are relevant: (1) the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing; (2) the material facts were not adequately developed at the state court hearing; and (3) a catch-all provision where, for any other reason, the state trier of fact did not afford the petitioner a full and fair hearing. *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757.

■ In discussing the three *Townsend* grounds for an evidentiary hearing, Kavanagh essentially repeats his argument that the post-conviction hearing in the state trial court was unfair because the court did not permit him to call witnesses. The only witness to appear at the hearing was Buslee. Both sides questioned him about his trial strategy and performance.[2] In addition, the trial court examined the voluminous exhibits and affidavits submitted by Kavanagh. Kavanagh argues that despite the court's review of the affidavits, the court should have allowed him to call the affiants to testify in person. We disagree. The in-person testimony of the affiants was unnecessary; the affidavits represented the most favorable version of Kavanagh's arguments. If he could not win based on the affidavits, live testimony would not have helped.

Kavanagh also insists that the hearing was unfair in that the trial judge refused to consider the substance of the affidavits because they contained hearsay. We disagree. First, the state court looked beyond the hearsay rule and found that "even if the rule against hearsay did not exist, the probative value of such inconclusive evidence would be doubtful." Second, the substance of the affidavits was, in overwhelming part, inadmissible hearsay. The fact-finding procedures utilized by the trial court at the post-conviction hearing were fair and adequate. Buslee's testimony coupled with Kavanagh's exhibits sufficiently developed the factual background in this case. Accordingly, Kavanagh was not entitled to an evidentiary hearing before the district court.

### C. *Exclusion from Hearings on Motions*

■ We reject Kavanagh's argument that he was improperly excluded from hearings on various motions. Kavanagh presents no compelling authority supporting his purported "right" to be present at these hearings. Nevertheless, Buslee properly waived Kavanagh's "right" to appear at the hearings and, at the time of the hearings, Kavanagh agreed with Buslee's arguments. As discussed above, Kavanagh and Buslee agreed prior to trial that it was imperative to ex-

---

**2.** Kavanagh repeatedly denigrates Buslee's testimony at the post-conviction hearing because much of it was elicited by "leading" questions from the prosecutor. However, the state court judge heard Buslee's testimony and found credible his testimony regarding his trial strategy. That judge was in a particularly good position to evaluate Buslee's testimony because he also had presided at trial. We defer to the state court finding that sound strategy motivated Buslee's actions. 28 U.S.C. § 2254(d); *Armstrong*, 34 F.3d at 426.

clude all "other acts" evidence. This strategy was motivated by a desire to preclude the victim from testifying about incidents other than those charged in the indictment. At the pertinent hearings, the trial judge sided with Buslee and excluded all "other acts" evidence. In retrospect, Kavanagh now argues that if he had been present at these hearings, he could have voiced his opinion that some favorable "other acts" evidence should be admissible. In other words, as the magistrate judge recognized, this claim boils down to an assertion that Kavanagh had a right to be at the hearings in order to argue against his own attorney who was pursuing their agreed upon strategy. There is no such right. Buslee's strategy regarding "other acts" evidence was reasonable and resulted in Kavanagh's acquittal on one of the two charged counts. Accordingly, Kavanagh should be glad that he was not present in these hearings. Although hindsight often may be 20/20, in this case it is not.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.